IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TIMOTHY NICKLAS, | ) | CASE NO. 1:07 CV 73 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| UNITED PARCEL SERVICE, INC., et al., | ) | <u>MEMORANDUM OPINION</u> |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the Court on Defendants' Motion for Summary Judgment. (ECF #13). Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendants Michael Kline and United Parcel Service, Inc. ("UPS") have moved for summary judgment on Plaintiff, Timothy Nicklas' claims of age discrimination in violation of the Ohio Revised Code §4412.02(A), Retaliation, Hostile Work Environment, Intentional Infliction of Emotional Distress and Breach of Contract. For the reasons set forth below, Defendants' Motion is granted.

**Procedural and Factual Background**

Plaintiff Timothy Nicklas filed the instant action against his former employer, Defendant UPS and his former supervisor Defendant Michael Kline in the Court of Common Pleas for Medina County on December 11, 2006. Defendants removed the action to federal court on January 10, 2007. Mr. Nicklas asserts that he was terminated from his employment because of his age, in violation of the Ohio Revise Code §4412.02(A) (Count 1); and in retaliation for engaging in protected activity

of complaining about wage and hour law violations and for filing workers' compensation claims. (Count 2). In addition, Plaintiff also asserts that he was subject to a hostile working environment because of his age and his engagement in protected activities (Count 3) and that Defendants intentionally inflicted severe emotional distress upon him (Count 4) and that Defendant UPS breached a contract (or violated public policy) by terminating Plaintiff. (Count 5).

Mr. Nicklas was hired by UPS on January 4, 1988 as a part-time unloader. Eventually, Mr. Nicklas was hired as a full-time package car driver. Like most employees in the UPS labor force, Mr. Nicklas is a member of the International Brotherhood of Teamsters and the terms and conditions of his employment are detailed in an extensive collective bargaining agreement between UPS and the Teamsters.

Before he started as a full time driver, Mr. Nicklas received the three weeks of training from UPS given to all new package car drivers teaching them the proper methods for driving and delivering packages. After training, UPS managers and supervisors monitor all drivers by riding along with them at least once or twice annually. On road supervisors monitor a driver's compliance with UPS work methods, such as making appropriate package selection and using proper delivery methods, like walking with a "sense of urgency."

Throughout his employment, Mr. Nicklas moved around various routes and ultimately arrived at the Wadsworth, Ohio UPS facility. Mr. Nicklas asserts that he was injured at work and received workers compensation. His workers compensation claims were filed in 1996 and 2001. Mr. Nicklas also states that during his employment with UPS he realized that he could not complete the routes assigned to him when he took his lunch breaks. Mr. Nicklas asserts that he was discouraged from taking breaks. Thereafter, he claims that he began to take breaks and expressed concerns to

UPS management that the routes were designed to maximize time usage and discourage breaks. Mr. Nicklas says that he repeatedly told management that such actions (presumably discouraging the taking of breaks) was illegal.

Defendant Michael Kline drove a UPS package car for 17 years before he became an on-road supervisor. Mr. Kline started to supervise Plaintiff in September 2005.

At the start of the shift each day, UPS holds a pre-work meeting with employees, where managers or supervisors provide employees with new information, review problems or policies and discuss other business matters. On October 5, 2005, UPS reviewed how drivers should record information, like stops, deliveries, lunches and breaks, in their DIAD board. Drivers were told "Lunch and breaks are to be recorded in the board as they happen. No sorting is to be done after these periods . . . . move out without delay." Mr. Nicklas signed these instructions.

On September 8, 2005, Mr. Kline completed a ride-a-long and Service Provider Methods Evaluation with Plaintiff. During the ride-a-long, Mr. Kline repeatedly instructed Mr. Nicklas to increase his walk pace from the point of delivery to the package car. Mr. Nicklas informed Mr. Kline that he was physically incapable of walking faster.

The next day, UPS managers met with Mr. Nicklas to discuss his contention that pain and his physical condition prevented him from walking at the pace UPS expected of a package car driver. UPS told Mr. Nicklas that he should not experience pain in performing his job and instructed him to seek medical help. Mr. Nicklas saw a doctor for a Department of Transportation physical the next day. The doctor issued Mr. Nicklas a new DOT medical certificate finding that Mr. Nicklas did not have a problem that would prevent him from working.

Upon his return to work on September 13, 2005, UPS told Mr. Nicklas that he needed to

change his poor performance immediately.  UPS manager Tim Alters also told Mr. Nicklas that he had heard talk that Mr. Nicklas had been bragging to his co-workers that he was purposely performing his job in a manner to drive down the amount of work he was assigned.  Management believed that Mr. Nicklas' job performance continued to be unacceptable, so the management team in the Wooster facility decided to observe Mr. Nicklas performing his job on October 4, 6 and 7, 2005.  Mr. Kline and security supervisor Jon Scott observed Mr. Nicklas working at a deliberately slow pace, extending his lunch breaks and falsifying his time sheet during that three day period.  Based upon these observations, which were supported by sworn statements, videotapes and/or time stamped photographs, UPS fired Mr. Nicklas on October 17, 2005 for dishonesty, a violation of Article 17(a) of the Collective Bargaining Agreement.  At the time of his discharge, Mr. Nicklas was 42 years old.  Mr. Nicklas grieved his discharge, which was ultimately upheld by a joint union-management review board.  More than a year after his discharge, Mr. Nicklas filed this action alleging age discrimination, retaliation, hostile work environment, intentional infliction of emotional distress and breach of contract.  Defendants contend that all of the claims fail as a matter of law.

### **Summary Judgment Standard**

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex v. Catrett*, 477 U.S. 317, 323 (1986) (citing FED. R. CIV. P. 56(c)). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. The court will view the summary judgment motion in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 252). Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citations omitted). In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252.

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmover. The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995). FED. R. CIV. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the

> adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as an automatic grant of summary judgment, where otherwise appropriate. *Id.*

In sum, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

## Analysis

**I. Age Discrimination Claim**

Defendants contend that Plaintiff's age discrimination is time barred because Ohio Rev. Code §4112.02(N) requires that a claim for age discrimination brought pursuant to Ohio Rev. Code §4112.02 must be brought within 180 days from the date of the alleged discriminatory practice. The Ohio Supreme Court held, in an action brought pursuant to Section 4112 and 4112.99 for age discrimination, that "any age discrimination claim, premised on a violation described in R.C. Chapter 4112, must comply with the one-hundred-eighty-day statute of limitations period set forth in former R.C. 4112.02(N)." *Belliam v. Bicorn Corp.*, 69 Ohio St.3d 517, 520 (1994). Plaintiff was discharged on October 17, 2005 and did not file this lawsuit until December 11, 2006, well after the 180 day cutoff.

Plaintiff counters that Ohio courts have grafted a six year statute of limitations onto Ohio Rev. Code §4112.99 which provides an independent cause of action and does not include an express statute of limitations. See *Cosgrove v. Williamsburg of Cincinnati Mgt. Co.*, 70 Ohio

St.3d 281 (1994). Section 4112.99 provides: "Whoever violates this chapter is subject to a civil action for damages, injunctive relief, or any other appropriate relief." While Ohio courts have adopted a six year statute of limitations for many actions brought pursuant to Section 4112.99, age discrimination claims brought pursuant to Section 4112.02 must be filed within the express limitation period set forth in Section 4112.02(N). The Second District Court of Appeals explained this distinction as follows:

> Regarding the statute of limitations issue, the *Bellian* court recognized that although R.C. 4112.99 creates an independent civil action, there may be instances where it would conflict with more specific provisions of Chapter 4112, at which time the existing rules of statutory construction would be applied to address the conflicts. *Bellian*, at 519, 634 N.E.2d 608. Applying the Ohio rules of statutory construction, the court concluded that the specific provision (4112.02) prevails over the general provision (4112.99) and therefore, the statute of limitations under 4112.02(N) applies to age discrimination actions brought under 4112.99. *Id. Accord Dunn v. Medina Gen. Hosp*. (1996), 917 F.Supp. 1185, 1192 (holding that claims for age discrimination under R.C. 4211.02 and 4211.99 were time barred because they were not filed within the 180-day limitations period). *But cf. Ferraro v. The B.F. Goodrich Co.*, 149 Ohio App.3d 301, 312, 2002-Ohio-4398, 777 N.E.2d 2282 (holding that *Bellian's* statutory construction rationale is inapplicable when two specific statutes, 4112.02(N) and 4112.14, creating the causes for age discrimination are at issue), and *Ziegler v. IBP Hog Mkt., Inc.* (2001), 249 F.3d 509 (holding that *Bellian* is not controlling when dealing with two specific statutes).

*Vickers v. Wren Industries, Inc*., 2005 WL 1685101 (Ohio Ap.. 2 Dist. July 8, 2005).

In this case, Plaintiff brings his action specifically under Section 4112.02, not Section 4112.99. Even if Plaintiff assumes that Section 4112.99 would apply, under the rationale of *Bellian* and the rules of statutory construction, the express limitations period of Section 4112.02(N) applicable to age claims brought pursuant to Section 4112.02(A) prevails over the general provisions of Section 4112.99. Accordingly, the statute of limitations applicable to

7

Plaintiff's age discrimination claim is 180 days.

Plaintiff next attempts to save his age claim by asserting that the claim was tolled until the grievance process was completed. The section of the Collective Bargaining Agreement on which Plaintiff bases his tolling argument is unsupportive. Article 5 relating to grievances provides:

> The **Union** and the **Employer** agree that there shall be no strike, picketing, lock-out, tie-up, or legal proceedings without first using all possible means of settlement, as provided in this Agreement ...

Emphasis supplied. This section of the collective bargaining agreement prohibits the Union and the employer from initiating litigation prior to conclusion of the grievance process. The Agreement does not prohibit the employee from initiating legal proceedings. Accordingly, the Court finds that the collective bargaining agreement does not toll the statute of limitations for Plaintiff's age discrimination claim under Ohio Rev. Code §4112.02. As the statute was not tolled, Plaintiff's age discrimination claim is time barred.

**II. Retaliation Claim**

In Count 2, Plaintiff claims that he engaged in protective activity when he complained to management about wage and hour law violations and when he filed for workers compensation for injuries suffered while at work. Further, Defendants knew of his protected conduct and fired him in retaliation for engaging in the conduct.

Plaintiff filed his workers compensation claims in August 1996 and May 2001. Plaintiff does not cite any statutory provision under which he is entitled to protection against retaliation for filing workers compensation claims. Defendants contend that if Plaintiff seeks protection against retaliation under the Ohio Workers' Compensation anti-retaliation statute, R.C. 4123.90,

8

the claim would be barred as it was filed outside the 180 day statute of limitations for that claim. See R.C. 4123.90 (the actions shall be forever barred unless filed within one hundred eighty days immediately following the discharge...).

The only other potential basis for a retaliation claim based upon Plaintiff's filing of workers' compensation claims would be under a public policy claim–that a public policy claim exists for wrongful discharge in violation of the public policy embodied in R.C. 4123.90. However, as Defendants point out, the Supreme Court of Ohio has not extended the public policy tort beyond the at-will employment relationship. The public policy exception does not apply when an employee has the protection of a collective bargaining agreement–it only applies to at-will employees. *Haynes v. Cincinnati Zoological Society*, 73 Ohio St.3d 254, syllabus(1995). *See also, Klepsky v. United Parcel Service, Inc.*, 489 F.3d 264 (6th Cir. 2007) (affirming dismissal of public policy claim pursuant to *Haynes* when employee was subject to a collective bargaining agreement, and not an employee at will.)

Moving on to Plaintiff's claims of retaliation for his wage and hour complaints, it is clear that he has failed to support a claim under 29 U.S.C. §215(a)(3) which protects employees who have filed a complaint or instituted or caused to be instituted any proceeding under or related to the Fair Labor Standards Act ("FLSA"). The anti-retaliation provision of FLSA provides that an employer is prohibited from "discharg[ing] or in any other manner discriminat[ing] against [an] employee because such employee has filed [a] complaint or instituted ... any proceeding under [the FLSA]." 29 U.S.C. § 215(a)(3). The burden-shifting analysis in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), applies to a FLSA claim of retaliation. *See, e.g., Moore v. Freeman,* 355 F.3d 558, 562 (6th Cir.2004).

9

In order to demonstrate a prima facie claim for FLSA retaliation, a plaintiff must show: (1) that he engaged in protected activity; (2) the employer knew of that activity; (3) the plaintiff suffered an adverse employment action; and (4) a causal connection existed between the protected activity and the adverse employment action. *Adair v. Charter County of Wayne*, 452 F.3d 482 (6th Cir. 2006). Such a prima facie showing of retaliation "creates a presumption that the employer unlawfully discriminated against the employee." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to set forth a legitimate, non-discriminatory reason for the adverse employment action. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. If the defendant carries this burden, the plaintiff then must prove by a preponderance of the evidence that the defendant's proffered reasons were not its true reasons, but merely a pretext for illegal discrimination. *Kocsis v. Multi-Care Mgmt., Inc.,* 97 F.3d 876, 883 (6th Cir.1996).

In this case Mr. Nicklas has not engaged in protected activity. He did not file a complaint or institute proceedings under the FSLA. The things that he complained about to UPS and or his supervisors are not subject to the FSLA but rather are employment issues covered by the collective bargaining agreement. For example, Plaintiff complained about the fact that taking lunch breaks, 20 minute breaks or bathroom breaks was discouraged. He states that he utilized "the grievance process to its fullest extent to ensure proper treatment by Defendants." (ECF #19). Plaintiff also contends that he filed a number of grievances before he began working in Wadsworth in 2001 regarding his contention that he was not being paid properly for overtime and that he was required to work excessive hours. In his deposition testimony, Plaintiff admitted that these complaints referred to violations of the collective bargaining agreement. He did not

contend that these grievances alleged violations of FLSA.  It appears that Plaintiff's argument is that he complained about many things, including overtime, hours, breaks and more at every location of UPS that he worked for as long as he worked at UPS.  Thus, he contends that UPS focused on Plaintiff more than other employees and subjected him to more ride alongs, critical reviews and criticism.  Plaintiff does not, however, provide any support that his complaints were the cause of his discharge.  Accordingly, even if Plaintiff had engaged in protected activity, he has not established the required causal connection between that activity and his discharge. In sum, the Court finds that Plaintiff has not established a prima facie retaliation claim.

### III.  Hostile Work Environment Claim

Plaintiff claims that he was subject to unwelcome verbal conduct and comments based on his age and his protected activities and that the harassment unreasonably interfered with his work performance and created an intimidating, hostile and offensive environment for Plaintiff. (Complaint, ¶¶39-40).   In order to establish a prima facie case of hostile work environment based on age, Plaintiff must establish the following five elements:

1. He was a member of a protected class;

2. He was subjected to unwelcome harassment;

3. The harassment was based on age;

4. The harassment had the effect of unreasonably interfering with Plaintiff's work performance by creating an intimidating, hostile, or offensive work environment; and

5. The existence of employer liability.

*Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999) ( "The elements and burden of proof are the same, regardless of the discrimination context in which the claim arises.") (quoting *Crawford v.*

*Medina Gen'l Hosp.,* 96 F.3d 830, 834 (6th Cir.1996)).

Defendants contend that Plaintiff has not demonstrated that the alleged harassment was based on Plaintiff's age or that the harassment was "so severe or pervasive as to constitute a hostile or abusive working environment" both to him and to a reasonable person. *See Black v. Zaring Homes, Inc.*, 104 F.3d 822, 826 (6th Cir. 1997).

Plaintiff states that the harassment included being followed and videotaped, reprimanded for taking three minute restroom breaks, excessive ride-alongs by management, excessive requirements for doctor's letters by management, not taking sunglasses off fast enough, being pulled aside and talked to about minor complaints excessively, waiting for a customer that was not ready, and being bumped off routes intentionally by management. (ECF # 19 at p.16). While these occurrences may have seemed irritating to Plaintiff, there is nothing to suggest that they were based on Plaintiff's age. Plaintiff has made no allegations, much less provided any evidence to support, that there was any verbal harassment or name calling or anything else that could be attributed to Plaintiff's age. While Plaintiff felt he was being singled out for extra review and comment, he does not have any evidence to support that this extra attention was based upon his age.

Moreover, even if Plaintiff could support that the "harassment" was based on his age, a hostile work environment is typically "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993). The key test is whether or not the alleged harassment is "severe or pervasive." A claim is evaluated both objectively and subjectively: "[t]he conduct must be severe or pervasive

12

enough that a reasonable person would find [it] hostile or abusive, and the victim must subjectively regard that environment as abusive." *Jackson v. Quanex Corp.,* 191 F.3d 647, 658 (6th Cir.1999), *quoting Black v. Zaring Homes, Inc.,* 104 F.3d 822, 826 (6th Cir.1997).

In determining whether an environment is one that a reasonable person would find hostile or abusive and that the plaintiff in fact did perceive to be so, courts look at all of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23, 114 S.Ct. 367; *Abeita v. TransAmerica Mailings, Inc.,* 159 F.3d 246, 251 (6th Cir.1998). "A recurring point" in the Supreme Court's opinions is that " 'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment' " and that "conduct must be extreme to amount to a change in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, ----, 118 S.Ct. 2275, 2283-84, 141 L.Ed.2d 662 (1998) (citations omitted).

Here, the conduct referenced by Plaintiff is not abusive or threatening and the alleged unwelcome verbal comments such as "We need to see Nicklas, we need to see Nicklas"... "you need to be in the office, you need to be in the office"... "There is no way Nicklas is going to get a new vehicle" are not offensive, abusive or humiliating. While the Court will accept Plaintiff's assertion that he felt the work environment was subjectively hostile to him, the totality of the circumstances would not lead an objective, reasonable person to the same conclusion. Accordingly, the Court finds that Plaintiff has not produced sufficient evidence to support a claim for hostile work environment.

**IV. Intentional Infliction of Emotional Distress**

Plaintiff alleges that the conduct attributed to Defendants in his other claims caused Plaintiff severe, emotional distress and that UPS, through its management was aware of the harassing behavior and hostile environment and willfully encouraged it by participating in it and failing to correct it. (Complaint, ¶¶44-45).  In his response to Defendants' Motion for Summary Judgment on this claim Plaintiff merely states that his allegations rise to the level of extreme and outrageous conduct necessary to establish severe emotional distress because "Plaintiff attested that he had never witnessed UPS use the same aggressive, monitoring tactics that it had used on him." (ECF #19 at p.17). Plaintiff offers no medical or other evidence of the severe emotional distress he says he suffered.

A claim for intentional or reckless infliction of emotional distress requires proof the defendant's conduct was "so extreme and outrageous as to go 'beyond all possible bounds of decency' and was such that it can be considered 'utterly intolerable in a civilized community.'" *O'Hara v. Mt. Vernon Bd. of Educ.*, 16 F. Supp. 2d 868, 895 (S.D. Ohio 1998) quoting Restatement (Second) of Torts, Section 46, comment d.   The Sixth Circuit, applying Ohio law, has held that "an employee's termination, even if based upon discrimination, does not rise to the level of extreme and outrageous conduct without proof of something more."*Godfredson v. Hess & Clark, Inc*., 173 F.3d 365, 376 (6th Cir. 1999).  Difficult work conditions, including "aggressive monitoring tactics"and lack of management support, are not sufficient as a matter of law, even if combined with a potentially discriminatory dismissal, to rise to the level of extreme and outrageous conduct that will support a claim for intentional infliction of emotional distress under Ohio law.  Consequently, Defendants are entitled to judgment on Plaintiff's claim of

intentional infliction of severe emotional distress.

**V.  Breach of Contract**

In Count 5 of his Complaint, Plaintiff alleges that UPS made promises and/or guarantees to Plaintiff in consideration of which Plaintiff accepted a position as an employee of UPS and failed to honor those promises and/or guarantees.  This claim also contains allegations that Defendants' conduct violated public policy.

Defendants assert that the contract at issue here is the collective bargaining agreement, and as such any breach of contract claim is preempted by Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. §185.  *Fox v. International Association of Machinists and Aerospace Workers*, Dist. 54, 914 F.2d 795 (6th Cir. 1990). As the Sixth Circuit explains:

> Section 301, by its terms, governs "[s]uits for violation of contracts between an employer and a labor organization...."29 U.S.C. § 185(a). However, the Supreme Court has read section 301 expansively to include individual collective bargaining workers' claims. *See, e.g., Smith v. Evening News Ass'n*, 371 U.S. 195, 200-01, 83 S.Ct. 267, 270-71, 9 L.Ed.2d 246 (1962). The Court also has deduced that section 301 "authorizes federal courts to fashion a body of federal law for the enforcement" of CBAs. *See Textile Workers v. Lincoln Mills,* 353 U.S. 448, 451, 77 S.Ct. 912, 915, 1 L.Ed.2d 972 (1957). To ensure uniformity in this area of federal law, the Court has further concluded that " '[s]tate law does not exist as an independent source of private rights to enforce collective bargaining contracts.' " *Caterpillar Inc. v. Williams,* 482 U.S. 386, 394, 107 S.Ct. 2425, 2430, 96 L.Ed.2d 318 (1987). In this respect, section 301 constitutes an exception to the well-pleaded complaint rule because "the pre-emptive force of § 301 is so powerful as to displace entirely any state cause of action 'for violation of contracts between an employer and a labor organization.' " *Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 23, 103 S.Ct. 2841, 2853, 77 L.Ed.2d 420 (1983). "State law is thus 'pre-empted' by § 301 in that only the federal law fashioned by the courts under § 301 governs the interpretation and application of collective-bargaining agreements." *United Steelworkers of America v. Rawson,* 495 U.S. 362, 110 S.Ct. 1904, 1909, 109 L.Ed.2d 362 (1990).

*Fox,* 914 F.2d at 799.

The collective bargaining agreement in place during Plaintiff's employment requires that an employee's grievance or complaint be handled as defined in the collective bargaining agreement and that the decision reached at any stage would be final and binding on both parties. (ECF #13, Ex. C at 172).  In this case, Mr. Nicklas grieved his discharge in accordance with the collective bargaining agreement and a joint union-management committee upheld his termination.  That decision was final.

In order to bring a breach of contract action asserting that his discharge violates the collective bargaining agreement, Plaintiff's only option would be to bring a hybrid Section 301 action in federal court.  A hybrid Section 301 action is essentially two actions, one against the employer alleging a breach of the collective bargaining agreement and one against the union for breach of the union's duty of fair representation.  See *DelCostello v. Int'l Bd. of Teamsters*, 462 U.S. 151, 164-165 (1983)("to prevail against either the company or the Union ..., employee-plaintiffs must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating breach of duty by the union . . .").

In this case, Plaintiff's breach of contract claim is preempted by Section 301 and Plaintiff has not stated a claim under Section 301 because he has not joined the Union nor asserted any claim of breach of duty of fair representation against the Union.  As such, Count 5 fails.

## **Conclusion**

For the reasons set forth above, there are no genuine issues of material fact with respect to any of the claims asserted in Plaintiff's complaint and Defendants are entitled to judgment as a

matter of law on all of Plaintiff's claims.  Defendants' Motion for Summary Judgment (ECF #13) is granted.  This action is terminated.

        IT IS SO ORDERED.

                                                    S/Donald C. Nugent
                                        DONALD C. NUGENT
                                        United States District Judge

DATED:   December 7, 2007